IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                              No. CR 98-136 BB

JOSE G. DELREAL-ORDONES,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>SETTING ASIDE VERDICT AND</u>**
**<u>GRANTING NEW TRIAL</u>**

      THIS MATTER is before the Court on the Defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, and the Court having heard argument and further researched the issue, FINDS the motion is well taken and it will be Granted.

**<u>Discussion</u>**

      During trial, the United States ("Government") moved the admission of a tape recording made on the belt-hold tape recorder of Special Agent Michael Manns' of his encounter with the Defendant at the Amtrak station in Albuquerque. Since the tape was all but unintelligible, Agent Manns transcribed the conversation. Defendant did not object to the tape (Exhibit 4) being played

for the jury nor to the jury reviewing the transcription at the same time. Defense counsel did, however, object to the admission of the transcript as an actual exhibit. Since the Court was unable to fully understand the tape, the defense objection to admissibility of the transcript, on the ground its reliability was unverifiable, was sustained. The tape was then played for the jurors and they were allowed to simultaneously review the transcript (Exhibit 4A). Copies of the transcript were then gathered up by the Courtroom Clerk.

After several hours of deliberation, the jury found the Defendant guilty. As the Courtroom Clerk entered the jury deliberation room, he saw the last departing juror throw some papers on the table. Inspection revealed the papers to be the transcript of the recording. A further search of the jury room uncovered a second copy of the transcript. When counsel were informed, defense counsel immediately moved for a new trial.

The focal issue of the case was the Defendant's credibility. Defendant maintained his "friends" packed the six-pound box of Fab detergent, in which Agent Manns discovered four pounds of methamphetamine, into Defendant's suitcase. During interrogation at the DEA office, Defendant related a somewhat convoluted and lengthy tale regarding why he was originally in California and what he did while he was there. Defendant also explained why he missed the train

back to Kansas on February 9 and how he came to have a roomette on the February 10 train. The three DEA agents conducting the interview expressed skepticism and disbelief regarding Defendant's story both during the interview and at trial.

The transcript became a focus of the credibility battle when Defendant testified that he did not give Agent Manns permission to open the Fab box. The tape was generally unintelligible but the transcript reads::

> JD: I think it's getting out.
>
> MM: Break open that.
>
> JD: Sure, why not.
>
> MM: Woo.
>
> JD: That's alright.
>
> MM: Why don't you go ahead stand up with your hands behind your back.
>
> JD: Why, what did I do?
>
> MM: You're under arrest for possession of narcotics.

The importance of the permission issue was emphasized by the Assistant United States Attorney during closing argument:

> Was the defendant's testimony consistent with other witnesses? Recall yesterday on cross-examination

> the defendant testified before you that he never gave consent to Agent Mans to open this Fab box. I'd ask Mr. Savoy to play the tape now, that portion of the tape.
>
> (The portion of the tape was played.)
>
> Ladies and gentlemen, Agent Mans states "Break open that," and what he's referring to is this box containing the methamphetamine. And the defendant says on the tape, "Sure, why not." It's there, listen to it. Ladies and gentlemen, this defendant got on this witness stand and said, I never gave consent. Ladies and gentlemen, that's consent.

The transcript therefore became the Rosetta Stone of Defendant's credibility. This was further emphasized when defense counsel felt compelled to counter the prosecutor's remarks in his own closing:

> And to his credit you must consider that from the moment he consented to the inspection of that box – now, yesterday Mr. Delreal said, No, I didn't consent to opening that box. Well, perhaps his memory fails him. If the tape recording says he did say, Sure, open it up – whatever the tape says – well, ladies and gentlemen, that only reinforces what I've been saying. If he knew that he was carrying drugs in a box of soap inside his suitcase, why is he going to tell the man who would take him to jail to go ahead and open it?

In determining whether the jury's exposure to evidence which was not admitted warrants a new trial, the proper inquiry for the district court is "whether there was the 'slightest possibility' that it affected the verdict." *United States v.*

4

*Wood*, 958 F.2d 963, 967 (10th Cir. 1992); *United States v. Marx*, 485 F.2d 1179, 1184 (10th Cir.), *cert. denied*, 416 U.S. 986 (1974).  In this case, the Court must conclude there is, at the very least, the "slightest possibility" that the presence of the Government transcript affected the verdict.

Courts which, like the Tenth Circuit, follow a "slightest possibility" type test generally adopt a rebuttable presumption of prejudice when the jury has considered items not admitted into evidence.  *See United States v. Luffred*, 911 F.2d 1011, 1014 (5th Cir. 1990); *Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987); *United States v. Barnes*, 747 F.2d 246 (4th Cir. 1984).  *Cf. Remmer v. United States*, 347 U.S. 227 (1954) (in a criminal case any unauthorized contact presumptively prejudicial).  Since most of the jurors had departed before the extraneous material was discovered, the Court did not have the opportunity to question them regarding their exposure to, or use of, the transcript during deliberations.  In light of that and the Government's reliance on the inaudible tape to challenge Defendant's credibility, the Court cannot find the presumption of prejudice has been rebutted.  A new trial is therefore the appropriate remedy.  *Cf. United States v. Sullivan*, 919 F.2d 1403, 1425 (10th Cir. 1990) (even where court admonished jurors to consider only the portions of the tape they could hear, damage was done when prosecutor improperly used transcript during closing).

Defendant further moves for a new trial on the ground that the Court erroneously instructed the jury on the definition of "knowingly." The instruction used was an abbreviation of Fifth Circuit Pattern Jury Instruction No. 1.35. Specifically, Defendant objects to the sentence, "While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact."

Defendant testified that after packing his suitcase, Defendant took a shower. While in the shower his friends yelled in they were placing the six-pound detergent box in his suitcase as they had no need for it. Defendant said he did not want to hurt their feelings and could use the detergent back in Kansas, so he did not protest. It is true, as Defendant vigorously maintains, the Tenth Circuit has indicated this type of instruction "is rarely appropriate ... because it is a rare occasion when the prosecution can [resent evidence that the defendant deliberately avoided knowledge." *United States v. de Francisco-Lopez*, 939 F.2d 1405, 1409 (10th Cir. 1991). However, as Defendant also recognizes such an instruction has been approved "when evidence has been presented showing the defendant purposely contrived to avoid learning the truth." *Id. See also United States v. Barbee*, 968 F.2d 1026, 1033 (10th Cir. 1992); *United States v. Sasser*, 974

6

F.2d 1544, 1552 (10th Cir. 1992).  The evidence in this case creates an appropriate jury issue as to whether Defendant "deliberately blinded" himself to the placement of the methamphetamine in his suitcase.  Defendant's motion for a new trial on this basis is therefore denied.

## **O R D E R**

For the above stated reasons, Defendant's motion for a new trial is **GRANTED**.  The jury verdict is vacated and a new trial will be scheduled.

Dated at Albuquerque this 1st day of June, 1998.


_____
BRUCE D. BLACK
United States District Judge


Counsel for Government:
    James Tierney, AUSA
Counsel for Defendant:
    Benjamin Gonzales, AFPD